CASE No. 924.

CLARK v. SMITH.

1. The clerk of the Court of Common Pleas is the proper party to bring action upon a bond payable to the former commissioner in equity of his county, and also to foreclose the statutory lien upon lands sold for partition. .

2. A wife's share in the purchase money of land sold for partition, was paid in 1863 by the purchaser to the husband, who gave his receipt, which the commissioner in equity refused to receive as a voucher, unless the wife gave an order in writing requiring him to do so, whereupon the wife, without consideration, gave an order directing payment to the husband— *Held,* that the wife had waived her right to a settlement and that her share was paid.

3. Money due to an infant was paid to her father, who was generally believed to be her guardian. Upon action brought by the infant after attaining her majority, against the original debtor, there could be furnished no proof that the father had ever been the guardian—*Held,* that the plaintiff was entitled to a recovery.

4. And moneys paid by such father to the daughter after she attained her majority, could be properly applied by her as credits upon other indebtness of her father to her.

5. The mere purchasing and taking possession of land covered by the lien of a mortgage, does not constitute adverse possession, which would give currency to the statute of limitations; and the same principle applies where there exists the lien given by statute in cases of partition. *Daniels* v. *Moses,* 12 *S. C.* 130, recognized and followed.

6. A purchaser of property, which is covered by a statutory lien, of which he has no actual knowledge, is not a purchaser without notice.

Before WALLACE, J., Marion, April, 1879.

In this case Hon. B. C. Pressley, judge of the First Circuit, sat in the place of Hon. Henry McIver, associate justice, who had been of counsel.

Action commenced September 22d, 1876, by Robert K. Clark, clerk of the Court of Common Pleas for Marion county. The facts and pleadings are sufficiently stated in the opinion of the court. The conclusions of law by the referee are as follows:

The lands in question were sold under proceedings in partition and for division amongst the distributees and heirs-at-law of the late Samuel Smith; and by the provisions of the act of 1791, (5 *Stat.* 164) stand pledged for the purchase money, and the lien must be enforced unless there be something in the grounds of defence set up by the defendants. *Messervey* v. *Barelli*, 2 *Hill's Ch.* 575; *McQueen* v. *Fletcher*, 4 *Rich. Eq.* 152; *Allen* v. *Richardson*, 9 *Rich. Eq.* 53.

This lien is denominated in the last two cases a statutory mortgage, and in the first (*Messervey* v. *Barelli*,) Chancellor Johnston regards it better than a mortgage; and the doctrine is there announced that the court can, by no order, deprive the parties of the statutory lien and securety thus acquired. This adjudication puts an end, therefore, to the position of defendants' counsel, that the order of the court that the commissioner should take a bond and mortgage, and a confirmation of the sale on his report that such had been complied with, substituted the bond and mortgage for the statutory lien. The referee holds that the lien for the purchase money was complete at the time of the sale; that it was a legal and valid security to the parties interested conferred by the statute, and could not be defeated by any order of the court.

The defences relied upon are:

1. Adverse possession for the period required by the statute of limitations, by which the lien is barred so far as this land is concerned. It is as well at once to say that with the exception of George W. Smith, R. Vampill and George W. Harrelson, there has been no such adverse possession by any one of the

parties as would entitle them to hold by the statute of limitations before the commencement of this action; that as to them the statute is no protection. And the defence of the statute as to them is overruled.

With respect to the three first named, to wit, George W. Smith, R. Vampill and George W. Harrelson, there is no question as to their possession for the statutory period before suit brought. But can this possession avail them under the circumstances of this case? The case of *Drayton* v. *Marshall, Rice's Eq.* 373, is relied upon by the defendants, but the mortgage in that case was before the act of 1791, by which the mortgage was held to be a security merely; whereas, prior to that act the mortgagee was the owner of the legal title to the land, and authorized to sue after condition broken. In *Thayer* v. *Cramer,* 1 *McC. Ch.* 395, it was held that a mortgage was a mere security for the debt; that the mortgagor was a trustee for the mortgagee, and persons holding under him could occupy no better position. This authority is recognized in Drayton v. Marshall. In *Wright* v. *Eaves,* 5 *Rich. Eq.* 81, it is held that "to a bill filed to foreclose a mortgage of land against one who holds, through intermediate conveyances under the mortgagor, the statute of limitations is inapplicable, although the defendant and those under whom he claims have been in possession for more than ten years." In this case, Thayer *v.* Cramer is recognized, and the court say that that case and Smith & Cuttino *v.* Osborne, may be regarded as law.

In the recent case of *Norton* v. *Lewis,* 3 *S. C.* 25, these cases are recognized, and it is there held that a purchaser holding possession for the period of ten years, with notice of the mortgage, cannot avail himself of the defence of the statute of limitations in bar of the right of the mortgagee to foreclose. In this case the mortgage was recorded in proper time. This notice was constructive merely by the recording of the mortgage, and it was held that the plaintiff was entitled to a foreclosure of the mortgage, notwithstanding the adverse possession.

It is insisted here, however, by defendants' counsel, that these

defendants had no notice ; that the decree for sale for partition in 1860, was not required to be recorded, and is not sufficient to fix defendants with notice ; and that their adverse possession is a valid defence. If, as has been supposed by the eminent jurists who have discussed the question as to the statutory lien, that it is equivalent to if not a better security than a mortgage, it is difficult to perceive how its efficacy can be impaired, and though not required to be recorded more than the proceedings of the courts, but open to all and binding all concerned, (*Long* v. *Cason,* 4 *Rich. Eq.* 60; *Pettus* v. *Clawson,* 4 *Rich. Eq.* 92,) how it should afford less protection than a mortgage recorded. It appears to the referee that such a conclusion would make the provisions of the act of 1791 defective and illusory. But how stand the facts with regard to notice? Stephen Smith, to whom the land was sold by his brother, S. S. Smith, the purchaser at the commissioner's sale, was a party to the proceedings in the court of equity for the partition of the lands, and is fixed conclusively with notice of the lien. But assuming that one purchasing without notice from a vendor who had such notice may acquire a valid title, how is it with these three defendants ? As to George W. Smith, it would be difficult for any one to conclude that he had not notice. He did not say he had no notice that Samuel S. Smith had purchased this land at the commissioner's sale, or that he was not aware that it was sold as the property of his grandfather for partition ; and certainly a knowledge of these facts would deprive him of the defence of want of notice, for it is a well recognized doctrine that notice of a fact which put one on inquiry, where he could learn the truth as to the title, is sufficient to fix notice upon him. But waiving this, is there not other evidence of notice in this case ? The cause under which this land was sold was upon the docket of the court of equity, and the Court of Common Pleas after 1858 to 1869, and when these defendants became purchasers. True, the contest of title to this land was not pending, but it was the subject matter, amongst other matters (the accounts of the executor to the will of Samuel Smith, who acquired these lands subsequent to the execution of his will, which made them subject to distribution as intestate property.) This land was a portion of the subject matter of pro-

ceedings, which were acts done in a public office, open for information, notice to all parties concerned. *Long* v. *Cason,* 4 *Rich. Eq.* 60 ; *Payne* v. *Harris,* 3 *Strob. Eq.* 42 ; *Pettus* v. *Clawson,* 4 *Rich. Eq.* 92 ; *Green* v. *Slaytor,* 4 *Johns. Ch.* 38. *Lis pendens* is notice to the world, and binds the interest of all who purchase after suit brought and while pending. *Murray* v. *Ballou,* 1 *Johns. Ch.* 567 ; *Heatly et al.* v. *Finster & Muller,* 2 *Johns. Ch.* 159. And the referee holds that the proceedings in the cause referred to continuing on the docket of the court as mentioned, was such *lis pendens* as fixed constructive notice on these defendants ; for though the title to the lands was not litigated, there was evidence of a sale and the statutory lien, and also evidence that the bond was not paid, or the fund not distributed. It is not every ignorance of title or facts which would put purchasers on their guard to protect them from the consequences of implied notice. A purchaser is bound to ordinary diligence in making inquiry as to the source of title which he is purchasing. All of these defendants, instead of resorting to such, seem to have relied on their warranty of title ; and to this they must look for their indemnity in this case. *Murray* v. *Ballou,* 1 *Johns. Ch.* 576. Stephen Smith, from whom all these parties purchased, was a party to the proceedings in partition. *He thought the bond paid, and that all was right, he said in his testimony,* but the suit was as before, still pending when he sold. The order of sale, the report of sale, the terms of sale, were matters of record ; the objects of the bill had only been partially obtained. The accounts of the executor, and the proper distribution of the proceeds of sale, where there was an infant without guardian, were matters still open before the court, when these purchases were made of Stephen Smith ; and for the purpose of enforcing this lien, the cause was again docketed in 1876 ; and it is not deemed necessary to do more than to refer to the authority of Lord Hardwicke, cited by Chancellor Kent, 1 *Johns. Ch.* 587, where he says : "A purchaser *pendente lite* was bound by the decree in the suit. The pendency of the suit was itself notice." And he observed " that the rule was to prevent a greater mischief that would arise by people's purchasing a right under litigation." *Goeth* v. *Ward,* 2 *Atk.* 174 ; *Warsely* v. *Scarborough,* 3 *Atk.* 392. Lord Camden, in *Walker* v. *Small-*

*wood, Ambler* 676, enforced the same rule. See, too, *Bishop of Winchester* v. *Payne*, 11 *Ves.* 194. It is deemed unnecessary to follow the mass of authorities on this point. Enough have been cited with their reasons to show the necessity of such a rule, and the importance to persons purchasing who wish to look beyond their warranty of title, making inquiry as to the title, which in these was easy of access, and the facts as to the encumbrance patent to any one inquiring to learn them. Besides this, the bond was in the possession of the court. It could not properly be sued for collection without its order or direction; and to hold the parties interested barred of their rights of foreclosure may be to bar their right of recovery of the bond itself. This result would be to impute to the court such *laches* as would destroy the security procured by its machinery; a consequence that is not consistent with law or justice.

2. The second defence relied on is, that the defendants are purchasers for valuable consideration without notice, and are, therefore, entitled to protection in this action.

This defence applies to all of the defendants, whether holding adversely for the statutory period or otherwise. And it is not intended to say more on the subject of notice than what has been stated above. The statutory lien in this case stands upon the footing at least, *both in law and equity,* as a mortgage, made by act of the parties. In that particular it has been held, as before stated, as a *statutory mortgage.* And to a bill for foreclosure of a mortgage, it has been held in many cases that a purchaser cannot set up the defence of purchaser for valuable consideration without notice. It was so ruled in *Finch* v. *Shaw,* and *Collier* v. *Finch,* 19 *Beav.* 500; referred to in notes to 2 *Lead. Cas. in Eq.* 59; *Collins* v. *Archer,* 1 *Russ. & M.* 284; and Sir John Romilly and Lord Cranworth held, that when there was a legal right which had to be enforced by an equitable remedy, such right would be enforced, notwithstanding the party purchased for valuable consideration. This was a case of a mortgage where the defence was set up, but the foreclosure ordered.

It has been before held that the lien given by statute was a legal lien. The court of law had the right to sell for partition as well as the court of equity by the act of 1791, and it can in

no way be distinguished, so far as the right or remedy is concerned, from an ordinary mortgage; and it is only necessary to refer to the case of *Blake* v. *Heyward, Bail. Eq.* 208, and the authorities there cited, where it is held "that the plea of purchaser for valuable consideration cannot avail against a legal lien," etc., etc. So, here, the defendants purchased subject to a legal lien, and are liable to be divested by a sale. The fact that on account of the change of possession of the lands the equitable remedy has to be resorted to to enforce the lien, does not, in the judgment of the referee, alter the legal rights of the parties, or subject them to other defences than if the remedy was pursued at law.

The referee, therefore, holds the defence of purchaser for valuable consideration without notice, inapplicable in this case. On this point the cases of *Snelgrove* v. *Snelgrove*, 4 *Desaus.* 274; *Donald* v. *McCord, Rice's Eq.* 330; *Schultz* v. *Carter, Spears' Eq.* 542; *Dillard* v. *Crocker, Ib.* 26; *Bush* v. *Bush*, 3 *Strob. Eq.* 134; *Zorn* v. *Railroad*, 5 *S. C.* 90, are referred to as in consonance with the doctrine announced in Blake *v.* Heyward, from which extracts are above made.

The referee, therefore, holds that plaintiff is entitled to recover the amount due upon the bond, to wit, $4082.58, on January 2d, 1878, as per statement of the same accompanying this report; out of which sum Mrs. Elizabeth Allen and Mrs. Sarah F. Mullins are entitled, &c.

To this report exceptions were taken, all of which were overruled, and report confirmed by the Circuit judge. Defendants appealed upon the grounds considered by this court.

*Messrs. W. W. Sellers* and *C. P. Townsend*, for appellants.

*Mr. W. D. Johnson* and *C. A. Woods*, contra.

September 6th, 1880. The opinion of the court was delivered by

McGOWAN, A. J. Samuel Smith died intestate as to part of his property in 1858, leaving as his heirs-at-law his widow, Sarah, and children and grandchildren, John L., Stephen S.,

Samuel S., William H., Elizabeth, wife of Joseph W. Allen, Mary, wife of R. Q. Roberts, Jincey Ellis, widow, and a grand-daughter, Mary Frances Moody, now Mullins, whose mother had pre-deceased. There was a will which disposed of part of the estate, of which John L. Smith was executor, and he filed a bill against the heirs, among other things, for partition of so much of the estate as was intestate. At the February Term of the court of equity, 1860, the court ordered the intestate lands sold, and they were sold by C. D. Evans, Esq., commissioner in equity, April 1st, 1860, and purchased by S. S. Smith, one of the distributees, who executed to the commissioner a bond for $2750, with E. J. Moody and William H. Moody sureties, re- ceived title for the same, and executed mortgage as required of the premises to secure the purchase money. The sale was con- firmed by the court, and we suppose that at the same time the usual order for distribution was made, but it is not in the brief, and we are uninformed whether, if made, it was in the usual form to pay to the adult parties, to the guardians of minors, and the shares of married women, upon the joint receipt of husband and wife.

The mortgage, taken as required, was not recorded until January 6th, 1876. In the meantime, the purchaser undertook to pay the parties in interest their respective shares and to lodge their receipts with the commissioner, instead of paying directly to him. Several receipts were thus delivered to the commissioner, who, wishing time to make calculations, did not credit the bond, but placed the receipts in the record. The purchaser produced receipts in this way to about the amount of the bond, and he states that he thought it was paid in full.

Before the mortgage was recorded, and after it was supposed that the bond was paid, S. S. Smith sold the land to his brother Stephen, and he conveyed different parcels of it at different times to other persons who are in possession and have been made parties. The action was brought on the bonds in the name of the clerk of the court against S. S. Smith, obligor, and the parties in possession of the land to foreclose a statutory lien alleged to exist and for judgment on the bond for any balance after applying the proceeds of the land. It does not appear,

precisely, when the action was brought, but the order of court authorizing suit bears date March 22d, 1876, and it is supposed the action was brought soon after. The defendants all resisted the recovery on various grounds. They demurred, denying that the plaintiff was the successor to the commisssioner, and that he had not legal capacity to sue, or, if so, that he had not the right to foreclose the statutory lien, and that these two separate causes of action on the bond and to foreclose the mortgage, were improperly united. If the demurrer should be overruled they insisted that there was no statutory lien in the case, that having been superceded by the mortgage required and actually executed but not recorded. That the bond had been settled in full by the payment of their respective shares to the distributees. That the persons for whose benefit the suit was brought were barred by *laches*, lapse of time, and the statute of limitations; and that the defendants in possession of the different parcels of land were purchasers for value without notice, and that they had title by adverse possession for more than ten years.

The issues of law and fact were referred to W. W. Harllee, Esq., as special referee, who overruled the demurrer and the pleas of purchaser without notice, and of the statute of limitations; found that all of the distributees had been paid except Mrs. Elizabeth Allen and Sarah Frances Mullins, the latter claiming her mother's share, and, also, the share of her grandmother by assignment, and that for these two shares, judgment should be rendered on the bond for the sum of $4082.51, with interest from January 2d, 1878, and, if not paid, that all the lands should be sold under the statutory lien. This report was confirmed by the Circuit judge, and from his order the appeal comes to this court.

The referee's report is so full as to make it unnecessary to state at length the arguments and authorities upon which the different questions are determined.

The first question is whether the clerk of the court had legal capacity to maintain the action to foreclose a statutory lien under the act of 1791. That act is now repealed, but these transactions occurred while it was of force, and this case must be considered as if it were still on the statute book. The bond

2 P

was made payable to the commissioner or his successor in office.

Upon the abolition of the office of commissioner, 1869, the bond was transferred to the custody of the clerk of the Court of Common Pleas, and was under the control of said court. Judge Townsend ordered the clerk to place the bond in the hands of the attorney of Mary Frances Mullins for collection. That, itself, would seem to confer the authority to sue in the name of the clerk. · The statutory lien, the existence of which is not controverted by the exceptions to the order of the Circuit judge, notwithstanding the execution of a mortgage, was only a security for the bond, and, as an incident, went with it. The authority to sue the bond carried with it the right to foreclose the lien. *Billings* v. *Williamson*, 6 *S. C.* 122.; *Code*, §§ 134–136. The act of 1791 did not direct who should enforce the lien thereby given, but simply declared that the " courts shall direct a sale to be made on such credit and on such terms as to them shall seem right and proper, *and the land so sold shall stand pledged for the payment of the purchase money.*" As the bond for the purchase money was payable to the commissioner or his successor in office we must consider that the pledge was to him in the same way, and that both were transferred to the clerk of the court, who was the proper person to bring the action. *Daniels* v. *Moses*, 12 *S. C.* 130.

Upon the subject of the alleged payment of the bond, the Circuit judge sustained the referee in holding that the share of Mrs. Elizabeth Allen, paid to her husband, Joseph W. Allen, according to her order, should not be considered a payment, for the reason that there is no proof that she received the money or other consideration for her order in favor of her husband. The referee reports as matter of fact that most of the distributees were paid, but " with respect to the amount due Mrs. Allen, wife of Joseph W. Allen, there is more difficulty. The proof by S. S. Smith was that he gave to C. D. Evans, commissioner in equity, the receipt of Joseph W. Allen, with others, in full of the bond, but it was not received, as the wife's signature was not on it. [So as to the receipt of R. Q. Roberts.] He states that the commissioner told him to get the order of the married

women, and he produces the order of Mrs. Allen (the only one contested) in these words :

"Mr. C. D. Evans, please pay to Samuel S. Smith all my interest in the depot lands.

(Signed) "ELIZABETH ALLEN.

"April 13th, 1863."

"The referee concludes as fact that the order was signed by Mrs. Allen, but she then received no money for it. He also would hold that he did get Mr. Allen's receipt, and as he is fully sustained by the then commissioner in his account of the whole transaction he would hold that if he had a right to receive the money that that distributive share was paid. But Mr. Allen had no such right, and there is no evidence that any money was paid Mrs. Allen. She was under the disability of coverture at the time. Her order was not sufficient in the judgment of the referee to authorize the commissioner to credit the bond with such a payment or compel satisfaction for the amount due her unless it could be shown she received the amount."

Accepting this statement of the referee, we are to inquire whether his conclusion of law is correct; that no order or consent of Mrs. Allen that her husband should receive her share would authorize him to give a receipt and legal discharge for the same, unless Mrs. Allen received the money or some other valuable consideration for her consent. This must be determined by the law as it existed at the time. The constitution of 1868 secures to a married woman her separate estate in all respects as if she were sole and unmarried, but such was not the law in South Carolina before that time. By the old law, marriage imposed certain duties upon the husband, and in consideration therefor conferred on him some interest in all the property of the wife not settled to her sole and separate use. That interest was not the same in all kinds of property, realty and personalty, in possession and in action, but he did not stand as a stranger to any part of her property. As it was expressed by Chanceller Johnson in the case of *Durr* v. *Bowyer*, 2 *McC. Ch.* 372 : "By the common law all the chattels which belonged to the wife before marriage, or to which she becomes entitled in

her own right, are vested in the husband absolutely with respect to things in possession, and he may dispose of them as he pleases; but with respect to things in action, although the right to reduce them into possession is by law vested in him, the courts of equity have built up a system founded in good sense and common justice, which is intended to secure to the wife a suitable possession for her support and maintenance."

The interest which the wife has in *choses in action,* which belonged to her at the marriage, constitutes what is technically called the wife's equity, with respect to which it may be laid down as a general rule that if it be within the reach of the court it will not be permitted to be removed out of that jurisdiction until an adequate provision is made for the wife, unless she has already been sufficiently provided for, or on her own personal examination she thinks proper to waive the benefit of the provision. *McCauley* v. *Phillips,* 4 *Ves.* 17; *Clancy's Rights of Married Women* 188. When the land was sold, Mrs. Allen was divested of her interest in it and became the equitable owner of the money. This did not belong to her husband until he reduced it into possession. The commissioner had no right to pay it upon the single receipt of the husband, but it was the privilege of the wife not to insist on her equity, or to waive it. Such waiver, when made, even if she received no valuable consideration for it, was sufficient to authorize the husband to receive the money and give a legal discharge. Waiver did not depend upon consideration paid, but upon its being actual, *bona fide* and without undue influence. To secure this, the practice at first was to subject the wife to personal examination. Later it was held that the court would not volunteer to set up the wife's equity, and it was finally settled that it was a discharge to pay the wife's money *upon the joint receipt of husband and wife,* and the chancellors generally ordered that it should be paid upon such receipt. It was considered sufficient evidence of the waiver of her right to join her husband in a receipt " or to do some equally significant and unequivocal act." *Ex parte Geddes* 4 *Rich. Eq.* 302; *Yeldell* v. *Quarles, Dud. Eq.* 55; *Muse* v. *Edgerton, Ib.* 179; *Gillett* v. *Powell,* 1 *Spears' Eq.* 150.

Here the facts, as found by the referee, are that nearly twenty

years ago, Samuel S. Smith purchased at commissioner's sale a tract of land, in which his sister, Mrs. Allen, had an interest. Her husband, at the time, received her share from the purchaser, and gave his receipt. The commissioner refused to take that receipt unless the wife of Allen would signify her assent by giving an order in writing for the payment to her husband. She gave that order in writing. This was a compliance certainly with the requirement of the commissioner and with the order of distribution, if one was made in the usual form, and, we think, was a waiver of her equity in favor of her husband by "an act equally as significant and unequivocal" as if she had signed a joint r - ceipt with her husband and he had drawn the money upon such receipt. The bond should be credited with the share of Mrs. Allen as paid.

The interest of Sarah Frances Mullins in the estate of her grandfather arose in two ways: first, her share in the land bond, which is claimed in this suit, and the other funds relinquished to her in the same way by the other distributees, which are not involved here. When these transactions took place she was of tender years, and lived with her father, E. J. Moody, who was believed by all parties to be her regularly appointed guardian. He acted as such. The commissioner in equity treated him as guardian, and to him, as such guardian, S. S. Smith paid the full share of Sarah Frances in the land bond, viz., the sum of $1100; took his receipt for the same in full and delivered it to the commissioner, who filed it in the office with the bond. The matter stood in this condition until Sarah Frances attained full age, married and brought this suit, when it was discovered that E. J. Moody was not her appointed guardian, or at least no evidence of the appointment could be found. Under these circumstances it is insisted that the court should presume that Moody was appointed guardian of his daughter, and that the payment to him should operate as satisfaction to that extent of the land bond. It seems that he held himself out as guardian, and that both Smith and the commissioner acted in good faith and were deceived; but in the absence of all proof of its existence, and as against one, then an infant, the court could not, from mere lapse of time, less

than twenty years, presume that E. J. Moody was appointed guardian of his daughter, Sarah Frances.

Besides the money paid to him, as above stated, by S. S. Smith, E. J. Moody received for his daughter other sums, given to her by the other distributees of the estate. This latter fund he also received without proper authority, by giving receipts in the following form : " Received of John L. Smith a conditional gift to my daughter, Sarah F. Moody. The conditions are as follows : If Sarah F. Moody lives to have lawful issue, and Samuel Smith's will is not protested or broken, then final," &c. The conditions were performed. It seems that after the marriage of Mrs. Mullins, E. J. Moody paid her in part of the money he had received for her, viz., about the sum of $2800. Clearly this should be a payment upon her claim against her father, and as he is unable to pay the remainder it becomes important to ascertain to which part of the money in his hands it should be credited—that received from the land bond, or the donation fund    The referee holds that the whole payment should be credited on the donation fund, and that no part of it should be set down to the money received for the land, upon the ground that, as to the donation fund, he had made himself " a self-constituted trustee to pay to the daughter," &c., while the appellants insist that the payment should be considered as made first from the land fund, or at least that the payment should be credited to both funds in proportion to their respective amounts. The whole evidence is not before us, but from what appears we can discover no error in the decree in this respect. The principle is well settled that the owner of the money—the debtor—has the right at the time of payment to direct the application, but if he does not make the application the creditor has that right. *Heilbron* v. *Bissell, Bail. Eq.* 430 ; *Williams & Co.* v. *Vance & Mosely,* 9 *S. C.* 348.

Mrs. Mullins had a claim against her father, originating in two distinct sources, entirely different in character. One was a contract by which he assumed a trust, cognizable as such in equity, at the instance of the *cestui que trust.* The other was a payment by *mistake,* to her father as her assumed guardian, and as to which the only obligation imposed was to refund the sum to those from whom it came. By that wrongful payment no in-

debtedness arose from Moody to his daughter which she was bound to recognize and set up. To have done so to any extent might have imperilled her recovery against those who were her debtors. If the erroneous payment to Moody made him the debtor of his daughter, as it would have done if he had been in fact her guardian, the payment would have discharged those making it. Moody had the right to pay the money back to those who made the payment, which is inconsistent with the view that the payment itself made Moody the debtor of his daughter. Did the parties making the wrongful payment have the right to insist that the daughter should take a new debtor in discharge of them? If Mrs. Mullins were bound by any rule or principle of law or equity to receive part of the money on one account and part on the other, then we might hold that she received the money under that rule, and the credits should be applied to both in proportion to their respective amounts; but we know of no such rule, unless the parties have a right to say to her, you shall take your father as your debtor in our place. Not being under any such restraint by the law, she declares that it was Moody's money due her as a *cestui que trust.* She had a perfect right to say to her trustee, as you have not indicated how it shall be applied, I receive the money on account of the trust. As against the trustee she has the right to say so now; and we know of no equity to control that right upon her part as creditor. This exception is overruled.

It appears that at least three of the parties, George W. Smith, R. Vampill and George W. Harrelson, had been, at the time the suit was brought, in possession of their respective parcels of the land purchased from Mr. Stephen Smith more than ten years, and they insist that they have title under the statute of limitations. We agree with the referee and Circuit judge that this defence cannot avail. The lien bound the lands in the possession of S. S. Smith, and also that of Stephen Smith, as they, being parties, had actual notice. They conveyed and the purchasers took no higher right than they could give. They purchased property subject to an encumbrance, and their possession, like that of the vendor, was not adverse, unless, by some act or declaration, they gave notice that they did not hold subject to, but

adversely to, such lien; and we do not think that merely re-
ceiving title and holding possession without anything else, would
be enough to prove such possession adverse. The case of Mc-.
Rhea *v.* Smith, relied on by the defendants, was the case of a
purchaser from defendant in execution, in whose possession
before the sale the land was bound by the lien. The principle
on which that case is placed is not clearly perceived, as the statute
of limitations refers in terms *to title claim for the land itself*, and
does not expressly include the case of a lien or mere power. But
the case has been recognized and we do not propose to disturb it.
We are not, however, disposed to extend that construction of the
statute beyond the actual case.

In reference to a purchase from a mortgagor, a different doc-
trine has been held and sustained by a long line of decisions from
*Thayer* v. *Cramer*, 1 *McC. Ch.* 395, down to *Gillison* v. *S. & C. R.
R. Co.*, 7 *S. C.* 181. We think the correct doctrine is stated in
the case of *Wright* v. *Eaves*, 5 *Rich. Eq.* 81, where the court say:
" To a bill filed to foreclose a mortgage of land against mort-
gagor, the statute of limitations is not applicable, although the
defendant and those under whom he claims has been in posses-
sion for more than ten years." It was also held in the late case
of *Norton* v. *Lewis*, 3 *S. C.* 25, that a purchaser holding posses-
sion for the period of ten years, *with notice* of the mortgage, can-
not avail himself of the defence of the statute of limitations in
bar of the right of the mortgagee to foreclose."

But it is urged that a statutory lien is a secret lien—that it is
never recorded, and in such case parties cannot be chargeable
with constructive notice. The declaration of the· statute, of
which all are presumed to have knowledge, and the record in a
public office open to all, taken together, are considered equivalent
to recording. *McQueen* v. *Fletcher*, 4 *Rich. Eq.* 164. This
precise question was decided in the case of Daniels *v.* Moses,
before cited, in which Judge McIver, as the organ of the court,
says: " We do not see how a purchaser of property, covered by
a statutory lien of which he has no express notice, can stand in
any better position than the purchaser of property covered by a
formal mortgage duly recorded, of which he has no express
notice. In the former case no recording is required, the pro-

ceeding under which it arises being regarded, doubtless, as a substitute for such recording, and which, therefore, operates as notice, just as the formal recording does in the other." This, also, disposes of the alleged *laches* on the part of the commissioner as the agent of the parties in interest.

The only remaining exception is " because the referee erred in overruling the plea of purchaser for valuable consideration without notice." We have already determined that the defendants had the knowledge of such facts as should have put them upon inquiry, and, therefore, were not without notice. The statutory lien must be considered on the same footing as a regular mortgage, which, although generally enforced by proceedings equitable in their character, gives a legal right, and it is so well settled that against such right the mere equity of a purchaser for value cannot prevail; that it cannot be necessary to do more than refer generally to some of the authorities upon the subject. *Finch* v. *Shaw,* 19 *Beav.* 500 ; 2 *Lead. Cas. in Eq.* 59 ; *Collins* v. *Archer,* 1 *Russ. & M.* 284 ; *Blake* v. *Heyward, Bail. Eq.* 208 ; *Donald* v. *McCord, Rice's Eq.* 340.

The judgment of the Circuit Court, except as herein modified, is affirmed, and the case is remanded to that court for such further proceedings as may be necessary.

WILLARD, C. J., and PRESSLEY, A. J., concurred.